<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| _____ : | |
| JONATHAN D. GREENBERG, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 16-2312-BRM |
| : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | **OPINION** |
| : | |
| Defendant. : | |
| _____ : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Jonathan D. Greenberg's ("Plaintiff") appeal from the final decision

of the Acting Commissioner of Social Security, Nancy A. Berryhill (the "Commissioner"),

denying Plaintiff disability benefits under Title II of the Social Security Act (the "Act") and

supplemental security income under Title XVI. (ECF No. 22.) For the reasons set forth below, the

matter is **REMANDED** for further administrative proceedings consistent with this Opinion.

## I.       PROCEDURAL HISTORY

On June 17, 2013, Plaintiff filed an application for disability insurance benefits ("DIB"),

under Title II of the Act alleging disability beginning June 12, 2013, due to anterior spinal cord

infarction, nerve damage, and diabetes.  (Tr. at 274–75.)[1] Plaintiff also filed an application under

Title XVI for supplemental security income ("SSI") on June 24, 2013. (Tr. 263–73.) Plaintiff's

applications were initially denied on October 28, 2013. (Tr. 150–51.) Reconsideration of Plaintiff's

applications were denied on May 27, 2014. (Tr. 152–53.) On August 29, 2014, pursuant to 20

---

[1] The Court will cite to the sequentially numbered transcript ("Tr.") filed in this case.  (ECF No. 4.)

C.F.R. § 404.929, *et seq*., Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 204.) On August 11, 2015, a hearing was held before Administrative Law Judge Karen Shelton ("ALJ Shelton"). (Tr. 35–107.) Plaintiff, represented by counsel, appeared and testified at the hearing. (*Id*.) In a decision dated August 20, 2015, ALJ Shelton determined Plaintiff was not disabled from June 12, 2013 through the date of the ALJ's decision. (Tr. 10–27.) Plaintiff requested the Appeals Council review this decision (Tr. 7–9), and the Appeals Council denied Plaintiff's request on February 18, 2016 (Tr. 1–3). Plaintiff then filed this civil action seeking judicial review of the ALJ's decision.

## II.     FACTUAL BACKGROUND

On June 12, 2013, Plaintiff went to the Ocean Medical Center complaining of chest pain, and weakness and numbness in his left leg. (Tr. 427.) Plaintiff was forty-six years old at the time. (Tr. 130, 140.) An examination revealed that he exhibited "significant weakness on the left lower extremity." (Tr. 428.) An MRI of the lumbosacral spine revealed "grade 1 anterolisthesis L4-5 with disk space narrowing and bilateral neural foraminal narrowing." (Tr. 538.) Plaintiff underwent stenting to address his coronary artery disease. (Tr. 550.) Plaintiff was diagnosed with acute anterior spinal artery syndrome, and diagnostic imaging confirming he suffered an acute infarction. (Tr. 413, 438.)

On June 18, 2013, Plaintiff was transferred to Jersey Shore Medical Center. (Tr. 538–39.) He underwent a repeat cardiac stenting. (Tr. 539.) On June 19, 2013, Plaintiff was transferred to Share Rehabilitation Institute, where he participated in a program of physical and occupational therapy. (Tr. 538–39.) Plaintiff was deemed medically stable and discharged on July 10, 2013. (*Id*.) His discharge diagnoses included: spinal cord infarct; hypertension; diabetes mellitus; coronary artery disease/stent; hyperlipidemia; and urinary tract infection. (Tr. 538.) At the time of discharge, durable medical

equipment included a cane, a rolling walker, and a shower chair. (Tr. 540.) On August 8, 2013, Plaintiff

told Dr. Edmund T. Karam, M.D., a cardiologist, he had no chest pain or discomfort. (Tr. 557.)

### A.    Review of Medical Evidence

#### 1.    Timothy J. Dunn, Jr., M.D.

In September 2013, Plaintiff was examined by a neurologist, Timothy J. Dunn, Jr., M.D. (Tr.

787.) Dr. Dunn noted Plaintiff had been attending physical therapy, and that the physical therapist had

noticed Plaintiff had "slow improvement in both strength and returning of sensation in his legs." (*Id.*)

Dr. Dunn observed the MRI indicated neuroforaminal compromise, especially at L4-L5. (*Id.*) Dr. Dunn

agreed physical therapy could help prevent spasticity from complicating Plaintiff's recovery. (*Id.*)

Plaintiff returned to Dr. Dunn in January 2015 for another examination. (Tr. 945.) Dr. Dunn

reported that diagnostic imaging showed multilevel degenerative changes, with spondylolisthesis and

advanced facet joint degeneration, severe narrowing of the neural foramina, and probable impingement

upon the L4 nerve roots. (*Id.*) Although Dr. Dunn found Plaintiff's strength was "almost back to

normal," Dr. Dunn reported Plaintiff still had paresthesias bilaterally in both legs, which was "unlikely

to recover." (Tr. 780.) Dr. Dunn reported Plaintiff does have "residual 5-/5 strength of the left lower

extremity but otherwise he made a very good recovery in terms of strength from his spinal cord stroke."

(*Id.*)

#### 2.    Gail Zimmerman, M.D.

On September 6, 2013, Gail Zimmerman, M.D., completed a general medical examination

report on Plaintiff. (Tr. 561–62.) Dr. Zimmerman reported she first examined Plaintiff on June 7, 2013,

and had repeated visits once or twice a month until the most recent examination on August 21, 2013.

(Tr. 561.) Dr. Zimmerman noted Plaintiff's history of severe hypertension, spinal infarction, unstable

angina, and new onset diabetes mellitus. (Tr. 561.) After examining Plaintiff, she reported Plaintiff had

high blood pressure and 4/5 strength in his lower extremities. (*Id.*) Dr. Zimmerman did not provide information regarding Plaintiff's treatment or response. (Tr. 562.) She opined Plaintiff: was unable to lift any weight; could stand or walk for less than two hours per day; could sit for less than six hours per day; had push/pull limitations; and had no other limitations, such as handling objects, hearing, speaking, or travelling. (*Id.*) She concluded Plaintiff "had a spinal infarction and is currently unable to work without a walker or cane. His strength is limited." (*Id.*)

### 3. Francky Merlin, M.D.

On October 12, 2013, Francky Merlin, M.D., performed a consultative examination of Plaintiff. (Tr. 568–71.) Plaintiff reported he could walk one block, take care of his hygiene, and help with household chores. (Tr. 568.) On examination, Dr. Merlin observed Plaintiff wore a leg knee brace, had normal station, but an antalgic gait. (Tr. 569.) Plaintiff was able to get on the examination table without difficulty, and his grip and manipulative functions were normal. (*Id.*) Dr. Merlin also reported Plaintiff could not walk on his heels or toes, had 4/5 strength in his left leg and 5/5 in his right, normal reflexes, and could straight leg raise from 0-90 degrees. (*Id.*) Dr. Merlin opined Plaintiff needed a cane to lean on for support and for balance while walking. (Tr. 572.)

### 4. Isabella Rampello, M.D.

On October 28, 2013, Isabella Rampello, M.D., prepared a physical residual functional capacity assessment of Plaintiff. (Tr. 135–37.) She determined Plaintiff could occasionally (less than one-third of an eight-hour day) lift or carry twenty pounds, and could frequently (between one-third and two-thirds of an eight-hour day) lift or carry ten pounds. (Tr. 135.) She opined Plaintiff could stand or walk for two hours per day, and could sit for six hours in an eight-hour workday. (*Id.*) Dr. Rampello concluded Plaintiff should never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 136.) She determined Plaintiff had no manipulative, visual,

or communicative limitations, and should avoid exposure to hazards. (Tr. 136–37.) Dr. Rampello reviewed Dr. Zimmerman's findings and concluded they were entitled to less weight because Dr. Zimmerman provided "no comprehensive physical findings." (Tr. 137.)

### 5. Barach Kassover, M.D.

On February 13, 2014, Barach Kassover, M.D., provided Plaintiff's attorney with a medical source statement. (Tr. 603–09.) Dr. Kassover opined Plaintiff could occasionally (up to one-third of an eight-hour day) lift and carry ten pounds. (Tr. 604.) Dr. Kassover reported Plaintiff could sit and stand for fifteen minutes at one time without interruption, and walk for ten minutes at one time without interruption. (Tr. 605.) He also opined Plaintiff, in an eight-hour work day, could sit for three hours, stand for two hours, and walk for one hour, and would need to stretch and/or rest for the remainder of the eight-hour workday. (*Id.*) Plaintiff needed a cane to walk, and could use his free hand to carry small objects. (*Id.*)

Dr. Kassover reported Plaintiff could occasionally reach overhead and push/pull with both hands. (Tr. 606.) He opined Plaintiff, using both hands, could frequently reach and handle, and continuously finger and feel. (*Id.*) He opined Plaintiff could occasionally operate foot controls with either foot. (*Id.*) Dr. Kassover determined Plaintiff could occasionally climb ramps and stairs, and balance; however, Plaintiff should never climb ladders or scaffolds, stoop, kneel, crouch or crawl. (Tr. 707.) Plaintiff had no hearing or vision impairments. (*Id.*)

Dr. Kassover opined Plaintiff's balance was "affected [and] could be dangerous [with] heights" and that he experienced discomfort in extreme temperatures. (Tr. 608.) Dr. Kassover reported Plaintiff should never be exposed to unprotected heights or extreme temperatures. (*Id.*) He determined Plaintiff could frequently operate a motor vehicle. (*Id.*) He noted Plaintiff could have occasional exposure to

moving mechanical parts, humidity and wetness, dust, fumes, odors and pulmonary irritants, and vibrations. (*Id.*) Dr. Kassover determined Plaintiff could have exposure to moderate (office) noise. (*Id.*)

Dr. Kassover observed Plaintiff had a balance and gait disorder and needed to use a cane to walk. (Tr. 609.) He opined Plaintiff could shop, travel without a companion, use public transportation, climb steps with a handrail, prepare simple meals, care for his personal hygiene, and handle paper files from a seated position, but could not ambulate without the use of a wheelchair, walker, two canes or two crutches and could not walk a block at a reasonable pace on rough or uneven surfaces. (*Id.*) Dr. Kassover certified these limitations from February 2014 remained the same on July 20, 2015. (Tr. 857–58.)

### 6. Jennifer T. Scheick, M.D.

On August 7, 2014, Jennifer T. Scheick, M.D., of the Shore Rehabilitation Institute, examined Plaintiff. (Tr. 637–39.) Plaintiff reported during physical therapy, he experienced "significant improvement in his overall strength and coordination," but since completing his physical therapy, he felt he had a decline in function and had more difficulty walking and experienced multiple falls over the past few months. (Tr. 637.) Plaintiff also noted swelling in his ankles, leg weakness, having trouble with stairs, and having balance issues. (*Id.*) Based on her examination of Plaintiff, Dr. Scheick observed Plaintiff had 5/5 strength in the upper extremities, 5/5 strength in bilateral knee extension and dorsiflexion, 4/5 strength in plantar flexion, and 3/5 right lower extremity hip abduction and extension. (Tr. 638.)

Dr. Scheick recommended Plaintiff restart physical therapy in order to try and improve "his lower extremity strengthening with focus on hip abduction and hip extension, which will overall improve his balance and stability." (*Id.*) She opined that in terms of returning to work, because it had been more than one year since the initial spinal cord injury, it was "difficult to project if there is going

to be any more improvement in his overall strength and functions." (*Id.*) As a result of Plaintiff's "decreased sensation and decreased strength," multiple falls, and requiring the use of a cane, she informed Plaintiff he may never be able to return to his landscaping job. (*Id.*) She remarked that it is "difficult to determine" whether Plaintiff's motor and sensory deficits would return back to the baseline. (*Id.*) She recommended a follow-up in six months to determine if there has been improvement. (*Id.*)

### 7. Surendra Barshikar, M.D.

Plaintiff transitioned care from Dr. Scheick to Surendra Barshikar, M.D., on February 12, 2015. (Tr. 640.) At that first visit, Plaintiff reported he was in physical therapy, and was still experiencing bilateral leg weakness and sensory impairment. (*Id.*) Plaintiff noted he continues to have poor balance, but he did not indicate any recent falls. (*Id.*) He indicated he can ambulate indoors without an assistive device and uses a cane outdoors. (*Id.*) Plaintiff reported to have right knee buckling while walking. (*Id.*) He further expressed he was independent in his daily-life activities, but needs more time to dress and tie shoe laces. (*Id.*)

On examination of Plaintiff, Dr. Barshikar observed Plaintiff had functional ranges of motions in both upper and both lower extremities. (*Id.*) Plaintiff's cranial nerves II to XII were "grossly normal." (Tr. 641.) He had 5/5 strength in his arms, knees, and right ankle, his left ankle strength was 4/5, as was his right hip flexion, and his left hip flexion was 4+/5. (*Id.*) His reflexes and tone were normal. (*Id.*) Dr. Barshikar observed slight right knee hyperextension and a "[s]low but stable" gait. (*Id.*)

Dr. Barshikar recommended Plaintiff complete physical therapy and then transition to a gym with supervision. (*Id.*) He reported that it is difficult to predict whether Plaintiff's sensory impairment and strength would improve enough to return to work, considering it had been nearly eighteen months since the spinal cord injury. (*Id.*) Dr. Barshikar noted Plaintiff has "sensory impairment and muscle weakness" in both lower extremities and requires a cane to ambulate, which makes him unable to return

to his landscaping or construction work. (*Id.*) As a result, Barshikar concluded Plaintiff "should consider job modifications or alternative job with sedentary work involving less physical activity." (*Id.*) Plaintiff completed physical therapy, after having "completed goals" and made "good gains," on April 9, 2015. (Tr. 719.)

### B.     Review of Mental Health Evidence

#### 1.     Jennifer Swan, LSW

On March 21, 2014, Jennifer Swan, LSW, evaluated Plaintiff, who complained of "feeling very depressed and anxious." (Tr. 610.) Plaintiff confirmed he never previously had inpatient care for any mental health issues, attended an outpatient group for one month (January 2014), and had met with a therapist and psychiatric nurse practitioner twice. (*Id.*) Swan assessed Plaintiff with "[a]djustment disorder with depression and anxiety mixed." (Tr. 613.)

#### 2.     Chanan Davis, M.A.

From 2014 and onward, Plaintiff was treated with Preferred Behavioral Health. (Tr. 626–39, 870–936.) Plaintiff was prescribed medication to treat his depression and anxiety. (Tr. 876.) As part of this treatment, Plaintiff met with Chanan Davis, M.A., B.A. (Tr. 875.) On July 16, 2015, Plaintiff reported to Davis that his "his anxiety has lowered somewhat" but "he still is struggling with depression." (Tr. 935.) Davis reported Plaintiff as having "[d]epressed and anxious moods, racing thoughts, very poor sleep, poor concentration, [and] weight gain attributed in part to some of the medications that [he] is taking." (*Id.*) Davis suggested Plaintiff continue weekly therapy. (*Id.*)

On August 6, 2015, Davis provided Plaintiff's counsel with a check-box opinion concerning Plaintiff's mental capacity, which broke down Plaintiff's perceived limitations into four categories: (1) no limitations, (2) precluded for 5% of an eight-hour workday, (3) 10% of an eight-hour workday, and (4) for more than 15% or of an eight-hour workday. (Tr. 949–52.)

Davis opined Plaintiff had no limitations with respect to: his ability to remember locations and work-like procedures; remembering very short and simple instructions; working in coordination or in proximity with others without distraction; asking simple questions or requesting assistance; accepting instructions and responding to criticism; maintaining socially appropriate behavior; and being aware of normal hazards and taking precautions. (Tr. 950–52.) Davis found Plaintiff would be limited 5% of an eight-hour workday in understanding and remembering detailed instructions; interacting with the public; getting along with coworkers or peers; and responding to work-setting changes. (*Id.*) Davis further opined Plaintiff would be limited 10% of an eight-hour workday in performing activities within a schedule; maintaining regular attendance, and being punctual; sustaining an ordinary routine without special supervision; making work-related decisions; and independently setting realistic goals or plans. (*Id.*) Davis found that, for more than 15% of an eight-hour workday, Plaintiff could not: carry out very short and simple instructions; carry out detailed instructions; maintain concentration and attention for extended periods; or travel in unfamiliar places. (*Id.*)

### 3.     Zulfiqar Rajput, M.D.

On May 7, 2014, Plaintiff received a mental consultative examination from Zulfiqar Rajput, M.D. (Tr. 623–25.) Plaintiff reported to Dr. Rajput that: his sleep and appetite were poor; his energy is low; he had been feeling sad and depressed; he had crying spells; felt hopeless and helpless; and had passive death wishes, but denies suicidal or homicidal ideas. (Tr. 623.)

Dr. Rajput reported Plaintiff as being "calm and cooperative." (Tr. 624.) Plaintiff's affects were "sad and constricted" and his mood was down. (*Id.*) He was able to spell "table" forward and backwards. (*Id.*) His fund of knowledge regarding the president and his immediate recall was 3/3. (*Id.*) His short-term memory showed that he was able to recall two out of three things after five minutes, and his long-term memory is "good." (*Id.*) Dr. Rajput diagnosed Plaintiff with "[m]ajor depressive disorder, recurrent

severe," "[g]eneralized anxiety disorder"; and "[c]hronic back pain." (Tr. 625.) He assessed Plaintiff

with a Global Assessment of Functioning (GAF) score of 50. (*Id.*) Dr. Rajput's long term prognosis of

Plaintiff was "guarded," "due to the combination of emotional and physical problems." (*Id.*) He

recommended that Plaintiff see a psychiatrist, therapist, and neurologist. (*Id.*)

### 4. Richard Filippone, Ph.D.

Richard Filippone, Ph.D., analyzed Plaintiff's alleged mental limitations on May 27, 2014. (Tr.

163–64.) Dr. Filippone determined Plaintiff's affective disorder was "Non Severe." (Tr. 163.) He

explained Plaintiff stopped working due to physical, not mental, limitations. (Tr. 164.) Additionally, Dr.

Filippone observed Plaintiff had "intact mental status apart from some depression." (Tr. 164.)

### 5. Michael E. Cremerius, Ph.D.

On June 3, 2014, Michael E. Cremerius, Ph.D., performed a case analysis of Plaintiff. (Tr. 161–

62.) Dr. Cremerius opined no mental impairments were established at the time of the initial review. (Tr.

162.) He noted Plaintiff had been out of work since October 2012, apparently as a result of Hurricane

Sandy putting his construction company out of business. (*Id.*) Dr. Cremerius observed Plaintiff's spinal

stroke occurred in June 2013, and that Plaintiff was diagnosed with adjustment disorder, depression,

and anxiety, with reports of mild alcohol abuse. (*Id.*) Dr. Cremerius observed Plaintiff "[p]erformed

well" on his May 7, 2014 psychological consultative examination. (*Id.*) Considering Plaintiff's medical

record, Dr. Cremerius determined Plaintiff's allegations of mental impairments were "only partially

credible," that Dr. Filippone's evaluation was "reasonable," and that Plaintiff's mental impairment was

"non-severe." (*Id.*)

### C.    Review of Disability Determinations

#### 1.    Melvin Golish, M.D.

On May 23, 2014, on reconsideration, state agency physician Melvin Golish, M.D., completed a revised physical residual functional capacity assessment of Plaintiff. (Tr. 165–67.) Dr. Golish reported Plaintiff could occasionally lift or carry ten pounds, and could frequently lift or carry less than ten pounds. (Tr. 165.) He opined Plaintiff could stand or walk, with normal breaks, for two hours per day, and could sit for four hours in an eight-hour workday. (*Id.*) Dr. Golish concluded Plaintiff had push/pull limitations in his lower left extremity. (*Id.*) He determined Plaintiff should never climb ladders, ropes, or scaffolds, and had occasional postural limitations climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling. (Tr. 166.)

Dr. Golish reported Plaintiff had no manipulative, visual, or communicative limitations. (Tr. 166.) He opined Plaintiff should avoid concentrated exposure to wetness and humidity and avoid moderate exposure to hazards, such as machinery or heights. (Tr. 166–67.) Dr. Golish determined Plaintiff had no limitation to extreme cold or heat, noise, vibration, or fumes, odors, dusts, gases, and poor ventilation. (Tr. 166.) Dr. Golish modified the existing residual functional capacity ("RFC") to "10/10/2/6," meaning lift carry ten pounds or carry ten pounds, stand or walk for two hours, and sit for six hours, "due to additional clarification of [treating source opinion]." (Tr. 167.)

#### 2.    Cristina Orfei, M.D.

On June 23, 2014, state agency physician Cristina Orfei, M.D., performed a "12 month after onset" case analysis of Plaintiff. (Tr. 162–63.) She reported Dr. Golish had denied Plaintiff's claim on reconsideration with a restricted RFC assessment. (Tr. 163.) Dr. Orfei concluded Plaintiff needed a cane "at all time for all terrain" and that he had the ability to lift 5 pounds with his unassisted hand. (*Id.*) Dr. Orfei remarked that the proposed RFC was "reasonable with the added modifications of

kneeling/crouching/crawling limited to less than occasional and more than never; ability to stand for [two hours out of an eight-hour workday] and sit [for six hours out of an eight-hour workday] is maintained." (*Id.*) Dr. Orfei noted that this RFC represented Plaintiff's "maximal exertional capacity" one year after the initial injury. (*Id.*)

### D. Testimony of the Vocational Expert

The ALJ asked the vocational expert to assume an individual of Plaintiff's age, education, and work experience, who could: perform at the sedentary exertional level, except that he could lift and carry up to ten pounds; stand or walk for two of eight hours with a cane; sit for six of eight hours, but must be able to sit after half an hour of standing, and stand after half an hour of sitting for five to ten minutes, while remaining on task; only occasionally push or pull with the lower extremities; not use ladders, ropes, or scaffolds; occasionally use ramps and stairs, balance, stoop, kneel, crouch, and crawl; have occasional exposure to extreme heat, cold, wetness or humidity; have no exposure to unprotected heights, moving machinery or other hazards; understand simple instructions and make simple work decisions in a routine environment with infrequent changes; and have frequent contact with supervisors and occasional contact with the public. (Tr. 93–94.)

Based on that hypothetical, the vocational expert concluded such an individual could not perform any of the Plaintiff's past jobs. (*Id.*) The vocational expert opined such an individual could work with "a limited range of sedentary because of the hazards," meaning bench assembly, inspecting, and clerical jobs, or other jobs of that nature. (Tr. 94.) The vocational expert provided examples of jobs that the individual could perform, including an addressing clerk, a final assembler of optical goods, and rating clerk[2]. (Tr. 94–96.)

---

[2] The transcript incorrectly identifies the vocational expert's response as "rating work," rather than "rating clerk."

### E.    ALJ's Findings

The ALJ issued her opinion in the matter on August 20, 2015. (Tr. 13–27.) She determined Plaintiff met the insured status requirements of the Act, and would continue to meet them through December 31, 2016. (Tr. 15.) However, after reviewing the record, the ALJ found Plaintiff was not disabled within the meaning of the Act, from June 12, 2013 through the date of her decision. (Tr. 13.) In reaching this conclusion, the ALJ applied the standard five-step evaluation process to determine if Plaintiff satisfied her burden of establishing disability.  (Tr. 15–27.)

At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity since June 12, 2013, the alleged disability onset date. (Tr. 15.) At step two, the ALJ determined Plaintiff has the following severe impairments: spinal cord infarction, affective disorder, obesity, diabetes mellitus, coronary artery disease, and degenerative disc disease as of August 2015. (Tr. 15–16.) The ALJ found, however, that the record was "devoid of any indication" to support Plaintiff's allegations that esophagitis, diverticulosis, gastritis, ulcer, mild duodenitis, urinary incontinence or erectile dysfunction caused work-related functional limitations that persisted for twelve months or more. (Tr. 16.) The ALJ found these to be non-severe impairments. (*Id.*) The ALJ noted a very recent diagnosis of unspecified sleep apnea, but Plaintiff had not undergone a sleep study, and thus, the ALJ found the impairment to be non-severe because there was no testing or functional limitations. (*Id.*)

At step three, the ALJ determined Plaintiff does not have an impairment, or combination of impairments, that meet or medically equal the severity of any of the impairments listed in the Impairment List. (*Id.*) In reaching this conclusion, the ALJ specifically considered the criteria for Section 1.04 (spinal disorders), Section 4.04 (cardiac disorders), Section 9.08 (endocrine disorders), Section 11.08 (neurological disorders), and Section 12.04 (affective disorders). (Tr. 16–18.)

The ALJ found Plaintiff did not meet the criteria of Section 1.04, because "the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumber stenosis" or "that the claimant's back disorder has resulted in an inability to ambulate effectively."(Tr. 16.) Additionally, the ALJ determined Plaintiff did not meet the criteria of Section 4.04 because "there is no evidence of chest discomfort associated with myocardial ischemia with: (A) sign or symptom limited exercise test; (B) three separate ischemic episodes or (C) coronary artery disease; AND marked limitation of physical activity." (*Id.*) The ALJ found Plaintiff did not meet the criteria of Section 9.08 because "there is no evidence of sustained disturbance of motor function, acidosis, or retinitis proliferans." (*Id.*) The ALJ determined Plaintiff did not meet the criteria of Section 11.08 because "he does not have spinal cord or nerve root lesions, due to any cause with significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." (Tr. 17.)

Additionally, the ALJ found that "the severity of claimant's mental impairments, considered singly and in combination, do not meet or medically equal" the criteria of Section 12.04. (Tr. 17–18.) In reaching this conclusion, the ALJ determined Plaintiff did not meet the criteria of paragraph B because: (1) Plaintiff has mild restriction in activities of daily living as he is independent in activities of daily living, notwithstanding the more time it takes him to dress and tie his shoelaces; he helps around the house; and he is able to do laundry and cook; (2) Plaintiff has mild difficulties in social functioning but he has good relations with his wife and stepchildren, attends church, and attends sporting events for his children; (3) Plaintiff has moderate difficulties with regard to concentration, persistence or pace, which is affected by current symptoms of a sleep disorder and daytime fatigue, but Plaintiff also has taken college courses to obtain an AAS degree after the alleged onset date; and (4) Plaintiff has not

experienced episodes of decompensation of extended duration. (Tr. 17.) The ALJ also found "the evidence fails to establish the presence of any" of the applicable paragraph C criteria. (Tr. 18.)

At step four, the ALJ found Plaintiff has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that Plaintiff can lift and carry no more than ten pounds, can stand or walk for two of eight hours but must use a cane, can sit for six of eight hours, but must be able to sit after half an hour of standing and stand after half an hour of sitting, for five to ten minutes while remaining on task; can occasionally push or pull with the lower extremities; no ladders, ropes or scaffolds; occasional ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; have only occasional exposure to heat, cold, wetness or humidity; no unprotected heights, moving machinery or other hazards; limited to simple instructions and simple work decisions, in a routine environment with infrequent changes; and can have frequent contract with supervisors and occasional contact with the public. (*Id.*) The RFC reflected the degree of limitation that the ALJ found in the paragraph B mental function analysis. (*Id.*) In determining Plaintiff's RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including the opinion evidence in the record. (*Id.*)

Based on this evidence, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements, concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 22.) The ALJ observed Plaintiff's statements and testimony demonstrate "that his activities are more extensive and his capabilities are greater than would be expected of one who is alleging totally disabling impairments and limitations." (*Id.*)

The ALJ additionally found the medical evidence did not support the extent of Plaintiff's allegations of impairment and limitations and the medical record "does not support his allegation that

his ability to function is so impaired as to render him totally disabled or unable to perform any substantial gainful activity." (*Id.*) In that regard, the ALJ opined that Dr. Dunn, Dr. Scheick, Dr. Barshikar, Dr. Kassover, Mr. Davis, Dr. Zimmerman, Dr. Merlin, and Dr. Jaffery's medical records do not support Plaintiff's allegations of disability. (Tr. 23–24.) The ALJ found Mr. Davis' opinion that Plaintiff was precluded from performing certain activities during the work day and also to be "less than persuasive" because "her opinion is not consistent with the overall medical evidence." (Tr. 24.) The ALJ also noted Davis is not a physician, and thus not an "acceptable medical source." (*Id.*) The ALJ also gave little weight to Dr. Zimmerman's opinion that Plaintiff can lift zero pounds, stand/walk less than two hours and sit less than six hours per day because "there is no supporting evidence provided to show that the claimant cannot lift at sedentary (no more than ten pounds) level." (*Id.*) The ALJ assigned significant weight to Dr. Kassover's opinion regarding Plaintiff's lifting restrictions, his restriction to only occasionally be exposed to humidity, wetness, and temperature extremes, his ability to occasionally push and pull, his restriction on unprotected heights, and Plaintiff's need for alternate positions throughout the workday. (*Id.*)

The ALJ concluded that, considering the record as a whole, including the relative weight of the medical evidence, the record supported her assessment of Plaintiff's RFC. (Tr. 25.) Based on this RFC and the vocational expert's testimony, the ALJ found Plaintiff is unable to perform his past relevant work as a landscape supervisor (DOT 406.134-014) and landscape laborer (DOT 406.657-014). (*Id.*)

At step five, based on Plaintiff's age, education, work experience, and RFC, as well as the vocational expert's testimony, the ALJ determined Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 25–26.) Specifically, the ALJ found Plaintiff could perform the occupations of addressing clerk (DOT 209-587.010), final assembler, optical goods (DOT 713.687-018), and rating clerk (DOT 214.587-010). (Tr.

26.) The ALJ also determined the vocational expert's testimony was consistent with the information

contained in the DOT. (*Id.*) Therefore, the ALJ concluded Plaintiff was not disabled from June 12, 2013,

through the date of the ALJ's decision. (Tr. 13.)

## III.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration,

a district court "shall have power to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*,

239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are

deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42

U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine

the record in its entirety for purposes of determining whether the Commissioner's findings are

supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the

standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). "Substantial

evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v.

Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a

reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those

of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507

U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify

the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the

evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *See Pallo v. Comm'r of Soc. Sec.*, No. 15-7385, 2016 WL 7330576, at *11 (D.N.J. Dec. 16, 2016). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling,

reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the

national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

## IV.    DECISION

Plaintiff argues the ALJ erred in her decision by: (1) failing to properly evaluate the medical evidence and adequately explain why certain medical evidence was deemed to be less persuasive; and (2) failing to properly evaluate Plaintiff's credibility. (*See* ECF No. 22.)

In making a disability determination, the ALJ must consider all evidence before her. *See, e.g.*, *Plummer*, 186 F.3d at 433; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). Although the ALJ may weigh the credibility of the evidence, she must give some indication of the evidence which she rejects and her reasons for discounting such evidence. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In *Burnett*, the Third Circuit held the ALJ had not properly decided an evidentiary issue because he "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." 220 F.3d at 121. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Consequently, an ALJ's failure to note if evidence that contradicts her findings was considered, or to explain why such information was not credited, are grounds for a remand. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 435 (3d Cir. 1999). However, this rule does not require an ALJ to explicitly discuss every piece of relevant evidence in her decision. *Fargnoli v. Massanari*, 247 F.3d 34,

42 (3d Cir. 2001). For example, an ALJ may be entitled to overlook evidence that is neither pertinent, relevant, nor particularly probative. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

Additionally, when the record presents inconsistencies with a physician's ultimate opinion or where the physician's notes actually undermine his own opinion, an ALJ may appropriately discount the physician's opinion. *See Burke v. Comm'r of Social Security*, 317 F. App'x 240, 243-44 (3d Cir. 2009). Although the ALJ must not "reject evidence for no reason or for the wrong reason, [he] may choose whom to credit when considering conflicting evidence." *Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir. 2015) (quotations omitted). A reviewing court "may not re-weigh the evidence." *Id.* Thus, even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is supported by substantial evidence. *See Simmonds*, 807 F.2d at 58.

Plaintiff argues the ALJ improperly gave lesser weight to certain pieces of evidence in the record showing the extent of his impairments and limitations. The Commissioner asserts the ALJ properly assessed all pertinent evidence. For the reasons set forth below, the Court finds the ALJ, in determining Plaintiff's RFC, failed to consider and explain her reasons for discounting pertinent evidence related to the extent of Plaintiff's impairments and limitations.

Specifically, Plaintiff argues the ALJ improperly discounted the opinion of Davis, a therapist. Davis completed a check-box opinion regarding Plaintiff's mental capacity and perceived limitations. (Tr. 949–52.) These limitations, as observed by the ALJ, included that Plaintiff would be limited 10% of an eight-hour workday in performing activities within a schedule; maintaining regular attendance, and being punctual; sustaining an ordinary routine without special supervision; making work-related decisions; and independently setting realistic goals or plans; and for more than 15% of an eight-hour

workday; and that Plaintiff could not: carry out very short and simple instructions; carry out detailed instructions; maintain concentration and attention for extended periods; or travel in unfamiliar places. (Tr. 24; 950–52.) The ALJ "note[d]" that Davis "is not a physician, and therefore not an 'acceptable medical source.'" (Tr. 24.) Pursuant to the rules promulgated under the Act, "acceptable medical sources" are limited to licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). Opinions and assessments from "other medical sources," such as therapists, may be used to provide additional evidence about the symptoms, diagnoses, and prognoses of any impairments identified by acceptable medical sources. 20 C.F.R. § 404.1513(d). However, other medical sources may not be used to establish *the existence of an impairment* in the first instance. Social Security Ruling 06-03p, 2006 SSR LEXIS 5 at *4; *see also Dougherty v. Astrue*, 381 F. App'x 154, 156 (3d Cir. 2010).

Within these parameters, the opinions of other medical sources must be weighed using the same factors as medical opinions, i.e., how long the source has known and how frequently she has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well she explains her opinion; whether she has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. Social Security Ruling 06-03p, 2006 SSR LEXIS 5 at *10-13; *see also Mussi v. Astrue*, 744 F. Supp. 2d 390, 408-09 (W.D. Pa. 2010); *Barnhart v. Colvin*, No. 14-0767, 2015 U.S. Dist. LEXIS 21670, at *24 (M.D. Pa. Feb. 24, 2015). Therefore, the mere fact that Davis, a therapist, is an "other medical source," rather than an "acceptable medical source," is not a legitimate basis to assign little weight to his opinion regarding the extent of Plaintiff's impairments and limitations. Beyond noting that Davis was not an "acceptable medical source" within the meaning of the Act, the ALJ provided limited discussion of Davis' opinion. The ALJ found Davis' opinion "to be less than persuasive"

because it was "not consistent with the overall medical evidence." (*Id.*) The ALJ also determined Davis "has not provided any evidence to support these significant limitations." (*Id.*) The ALJ, however, did not explain why Davis' proposed limitations were inconsistent with the overall medical evidence. Indeed, the ALJ did not identify *which other medical evidence* contradicts Davis' opinion.

The Court is unable to review the ALJ's conclusory findings regarding Davis' opinion. It is not clear to what extent the ALJ placed lesser weight on Davis' opinion because he, as a therapist, is not "acceptable medical source" within the statute, as opposed to fully weighing Davis' opinion under the same factors used for medical opinions. *See, e.g.*, *Braker v. Comm'r of Soc. Sec.*, No. 16-0170, 2017 U.S. Dist. LEXIS 10672, at *44 n.4 (D.N.J. Jan. 26, 2017) (directing ALJ on remand to "weigh [a physician assistant's] opinion pursuant to the factors set forth in Social Security Ruling 06-03p"). A remand is necessary for the ALJ to explain why Davis' opinion was discounted. *See Schaudeck*, 181 F.3d at 435.

On remand, the ALJ should more thoroughly discuss why Dr. Zimmerman's opinion was given less weight. Dr. Zimmerman evaluated Plaintiff on multiple occasions in 2013. (Tr. 561.) Based on those observations, Dr. Zimmerman opined, in part, that Plaintiff was unable to lift any weight, could stand or walk for less than two hours per day, and could sit for less than six hours per day. (Tr. 562.) The ALJ also discounted this opinion, and assigned it "little weight because there is no supporting evidence provided to show that the claimant cannot lift at sedentary (no more than 10 pounds) level." (Tr. 25.) Dr. Zimmerman's opinion was based on Plaintiff's history and prior examinations. Insofar as the ALJ discounted this portion of Dr. Zimmerman's report, she has not provided any basis to do so. Although Dr. Zimmerman's opinion is contrary to other medical evidence on the record, the ALJ has not explained why Dr. Zimmerman's opinion that Plaintiff is unable to lift any weight should be discounted, while Dr. Kassover's opinion that Plaintiff could lift up to ten pounds occasionally should

be given significant weight. (*Compare* Tr. 25, *with* Tr. 24.) Consequently, although the ALJ claims to have considered Dr. Zimmerman's findings in assessing the extent of Plaintiff's impairments and limitations, she has not sufficiently explained her reasons for discounting Dr. Zimmerman's opinion.

The Court takes no issue with the ALJ's evaluation of the Plaintiff's credibility, and that issue need not be addressed on remand. Because further discussion of the medical evidence by the ALJ is required, the Court is unable to fully evaluate the ALJ's weighing and credibility assessments of that evidence to determine whether all of her conclusions are supported by the substantial evidence on the record. Accordingly, this case is **REMANDED**, and the ALJ is directed "to consider and explain [her] reasons for discounting all of the pertinent evidence before [her] in making [her] residual functional capacity determination." *See Burnett*, 220 F.3d at 121.

V.    **CONCLUSION**

For the reasons set forth above, this case is **REMANDED** for further administrative proceedings consistent with this Opinion. An appropriate Order will follow.


**Date:** January 31, 2018                        */s/ Brian R. Martinotti*
                                                   **HON. BRIAN R. MARTINOTTI**
                                                   **UNITED STATES DISTRICT JUDGE**